# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HENRY SCHEIN, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 14 C 5019 |
| v. | ) |
| | ) Judge Jorge L. Alonso |
| GREGORY CHARLES PAPPAS, | ) |
| GREGORY PAPPAS, JR., and O&R | ) |
| MEDICAL SALES AND SERVICE, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Henry Schein, Inc., ("HSI") has moved for partial summary judgment [59] against defendant O&R Medical Sales and Service ("O&R") and for default judgment [67] against defendants Gregory Charles Pappas ("Pappas") and Gregory Pappas, Jr., ("Pappas Jr."). For the following reasons, the motions are granted in part and denied in part.

## BACKGROUND

Henry Schein, Inc. ("HSI") markets, distributes, and sells medical supplies and other healthcare products to medical practitioners, healthcare professionals, and healthcare organizations. (Pl.'s LR 56.1(a)(3) Stmt. ¶ 1, ECF No. 60.) HSI hired Pappas on July 1, 2013, as a "Field Sales Consultant," or "FSC." (*Id.*, ¶ 8.)

Pappas was an experienced salesman in the industry, and HSI had high expectations for him. (*Id.*, ¶¶ 9, 21.) To effect Pappas's hiring, on July 1, 2013, HSI and Pappas entered into three written agreements: an employment agreement (the "Agreement"), a confidentiality and non-solicitation agreement (the "Confidentiality Agreement"), and a letter agreement (the "Letter Agreement"). (*Id.*, ¶ 10.)

Under the Letter Agreement, HSI was to pay Pappas a guaranteed draw of $142,000 in his first year of employment. (*Id.*, ¶ 16.) Moreover, the Letter Agreement provided that Pappas would receive $100,000 in additional compensation, paid in two installments in the first four months of his employment, but he would have to repay this amount if he left HSI's employment before the end of his first year. (*Id.*, ¶¶ 17-19.) The Agreement obligated Pappas to work solely on behalf of HSI and to devote his "full loyalty" to HSI, without engaging "in any actions or conduct which compete with or which aids, furthers or assists, any competitor" of HSI. (*Id.*, ¶ 13; *see also id.*, ¶¶ 11-12.)

O&R Medical Sales and Service ("O&R") is a direct competitor of HSI. (*Id*, ¶ 4.) In September 2013, O&R hired Pappas Jr., Pappas's son. (*Id.*, ¶¶ 23-24.) In April 2014, Pappas's sales manager at HSI, Stuart Jacover, came to believe that Pappas had been "selling on the side" for O&R. (*Id.*, Ex. 9; *see also id.*, Ex. 10.) An HSI customer, Dr. D'Costa of My Family Doc LLC, reported to Jacover that she contacted HSI seeking a sales rep, she met with Pappas, and Pappas gave her a quote on HSI letterhead. (*Id.*, Ex. 9.) But before she could place the order, Pappas told her that he would be running the order through O&R, which Dr. D'Costa assumed was a subsidiary of HSI. (*Id.*)

Jacover also learned of a "[v]ery similar situation to My Family Doc" at another HSI account. (*Id.*, Ex. 10.) O&R invoiced an HSI customer, Dr. Danaher, for "an entire setup that should have been run through" HSI. (*Id.*, Ex. 10.) O&R documents obtained in discovery show that Dr. Danaher's orders were attributed to Pappas Jr. (*Id.*, ¶ 36.) O&R records also show that O&R paid Pappas a total of approximately $36,200 while he was employed by HSI. (*Id.*, ¶¶ 27, 49; *id.*, Ex. 13.) O&R issued two checks to Pappas totaling $7,000 two days after it received payment from My Family Doc. (*Id.*, ¶¶ 27, 34.)

Edward Reilly, the managing member of O&R, was familiar with Pappas as an experienced sales representative in the industry, and he learned at an industry event in July 2013 that Pappas was employed by HSI. (*Id.*, ¶ 22.) O&R denies that Pappas was actively selling for O&R. (O&R LR 56.1(b)(3)(B) Resp., ¶¶ 26, 28, ECF No. 78.) However, at Reilly's deposition in this case, Reilly acknowledged that Pappas "dealt with" two O&R customers, My Family Doc LLC and Dr. Danaher, while he was employed by HSI; Pappas accompanied Reilly on four or five visits to My Family Doc LLC prior to the time the account was "set up," *i.e.*, prior to the installation of equipment; and Pappas physically helped Reilly and Pappas Jr. set up the account by helping to move and install equipment. (Pl.'s LR 56.1(a)(3) Stmt., Ex. 6, Reilly Dep., at 56:6-15, 57:8-59:20.) Reilly described Pappas's role as "trying to help his son." (*Id.*, Ex. 6, at 59:3.) Reilly also acknowledged that O&R paid Pappas while he was working for HSI, but O&R denies that that these payments were sales commissions; rather, O&R states that it paid Pappas for helping to put together a sales manual and a computer program. (O&R LR 56.1(b)(3)(B) Resp., ¶¶ 27, 34, ECF No. 78.)

On May 14, 2014, HSI terminated Pappas for cause. (*Id.*, ¶ 40.) O&R hired Pappas on September 1, 2014, and O&R still has a relationship with him as an independent contractor. (*Id.*, ¶¶ 43-44.) From September 1, 2014 to August 7, 2015, Pappas generated $232,734 in gross profit for O&R. (*Id.*, ¶ 46.) Pappas Jr. remains employed by O&R. (*Id.*, ¶ 45.)

HSI paid Pappas $78,667.27 in guaranteed draw during the period it employed him, from July 1, 2013 to May 14, 2014. (*Id.*, ¶ 49.) It also paid him the $100,000 in additional compensation that it agreed to pay him under the terms of the Letter Agreement. (*Id.*, ¶ 48.) Pappas is obligated to repay this amount because he was terminated less than a year after he entered HSI's employment, but he has not done so. (*Id.*)

Before Pappas started working for HSI, HSI calculated the sales it expected Pappas to generate. (*Id.*, ¶ 50.) HSI projected that, in his first year, Pappas would generate $600,000 in sales from new business (*i.e.*, new customers that Pappas would attract), resulting in approximately $150,000 in gross profits. (Casamassa Decl., ¶ 35, ECF No. 61.) HSI believed that this estimate was very conservative for someone of Pappas's experience. (*Id.*) Around the same time, HSI had hired two other experienced sales representatives from competitors, and these sales reps generated $470,000 and $370,000, respectively, in gross profits in their first year of employment with HSI. (*Id.*, ¶ 36.)

Pappas was also assigned a number of existing HSI accounts, with the expectation that he would increase the sales those accounts were generating. (*Id.*, ¶ 16.) HSI had budgeted growth of $50,000 in gross profits for these accounts in Pappas's first year. (*Id.*, ¶ 38.) Ninety percent of HSI's FSCs achieve at least 85% of the projected growth set forth in the budget for their territories; FSCs who achieve less are generally regarded as failing. (*Id.*, ¶ 38 n.1.) There was virtually no growth in Pappas's accounts. (*Id.*, ¶ 18.) The existing HSI accounts that Pappas was given had generated about $100,000 in gross profits in the previous twelve months, and Pappas generated only about $100,000 in gross profits during the time he worked for HSI. (Pl.'s LR 56.1(a)(3) Stmt., Ex. 7, Casamassa Dep., 75:24-78:13, 96:24-98:14.)

## ANALYSIS

HSI moves for summary judgment against O&R on five claims: aiding and abetting breach of fiduciary duty (1st Am. Compl., Count II, ¶¶ 65-70); tortious interference with contract (*id.*, Count VI, ¶¶ 96-102); tortious interference with fiduciary and legal duties (*id.*, Count VII, ¶¶ 103-108); unjust enrichment (*id.*, Count X, ¶¶ 124-126); and civil conspiracy (*id.*, Count XIII,

¶¶ 139-141). Pappas and Pappas Jr. have not appeared before this Court or answered the complaint, and HSI has moved for default judgment against them.

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the court may not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court must view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

"Upon default, the well-pled allegations of the complaint relating to liability are taken as true, but those relating to the amount of damages suffered ordinarily are not." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). The plaintiff must still prove its damages. *Id.*

Thus, with respect to liability, the Court need only consider whether there is any genuine factual dispute requiring a trial as to O&R. The Court need not consider Pappas and Pappas Jr.'s liability; it may take the allegations of the complaint as true as against them. However, HSI must prove its damages as to all parties—and as to O&R, there must be no genuinely disputed issue of fact.

I. **O&R'S LIABILITY**

A. **Legal Standards**

"Under Illinois law, a breach of fiduciary duty claim has three elements: '(1) that a fiduciary duty exists, (2) that the fiduciary duty was breached, and (3) that such breach proximately caused the injury of which the plaintiff complains.'" *See, e.g., Neade v. Portes,* 739 N.E.2d 496, 502-03 (Ill. 2000). As an HSI employee, Pappas owed HSI a fiduciary duty of loyalty. *See Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003).

5

A third party who aids and abets another's breach of fiduciary duty may be liable for the breach himself if he "kn[ew] that the other's conduct constitute[d] a breach of duty and [gave] substantial assistance or encouragement to the other so to conduct himself." *McMahan v. Deutsche Bank AG*, 938 F. Supp. 2d 795, 809 (N.D. Ill. 2013) (citing RESTATEMENT (SECOND) OF TORTS § 876(B)). Similarly, a third party may be liable for interfering with another's fiduciary duty if the third party: (1) knowingly participated in or induced the other person to breach his duty, and (2) knowingly accepted the benefits resulting from the breach of duty. *Michalowski v. Flagstar Bank, FSB*, No. 01 C 6095, 2002 WL 113905, at *7 (N.D. Ill. Jan. 25, 2002).

"Under Illinois law, the essential elements of a cause of action for tortious interference with contract are: '[1] a valid contract, [2] defendant's knowledge of the existence of the contract, [3] defendant's intentional and malicious inducement of the breach of the contract, [4] breach of contract caused by defendant's wrongful conduct, and [5] resultant damage to the plaintiff.'" *George A. Fuller Co., a Div. of Northrop Corp. v. Chi. Coll. of Osteopathic Med.*, 719 F.2d 1326, 1330 (7th Cir. 1983) (citing *Swager v. Couri*, 376 N.E.2d 456, 459 (Ill. App. Ct. 1978)).

"The elements of unjust enrichment are: (1) the defendant unjustly retained a benefit to the plaintiff's detriment; and (2) the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Stephen & Hayes Constr., Inc. v. Meadowbrook Homes, Inc.*, 988 F. Supp. 1194, 1200 (N.D. Ill. 1998) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)).

To prevail on a claim for civil conspiracy, a plaintiff must establish: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a

lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694, 721 (N.D. Ill. 2014) (citing *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir.2007)).

### B. Factual Disputes

The parties' Local Rule 56.1 submissions show that the facts are mostly undisputed.

O&R contends that it did not pay Pappas any sales commissions while he was employed by HSI; the only payments it made to Pappas were for Pappas's help in putting together a sales manual and setting up a computer program. But as HSI correctly explains, this contention does not relieve O&R of liability for aiding a competitor; to the contrary, it confirms it. Pappas owed his employer HSI both a contractual duty of "full loyalty" (Pl.'s LR 56.1(a)(3) Stmt. ¶ 13, ECF No. 60) and a common-law duty of loyalty, both of which plainly prevented him from assisting another entity in competing with his employer. *See Vendo Co. v. Stoner*, 321 N.E.2d 1, 9 (Ill. 1974); *E.J. McKernan Co. v. Gregory*, 623 N.E.2d 981, 993–94 (Ill. App. Ct. 1993) (employee must act solely for his employer in all matters relating to his employment and may not compete with his employer).

O&R purports to dispute that Pappas helped "set up business for O&R" or that Pappas made any customer contact on behalf of O&R, citing Reilly's remark that Pappas "was trying to help his son," although it admits that Pappas accompanied Reilly to My Family Doc LLC on a number of occasions, including once to help set up equipment. (O&R LR 56.1(b)(3)(B) Resp., ¶¶ 26, 28, ECF No. 78.) Again, the dispute is immaterial. Even viewing all facts in the light most favorable to O&R, the undisputed facts show that Pappas assisted O&R in setting up an account with My Family Doc LLC, with O&R's knowledge and acquiescence. This is no less a

7

breach of Pappas's duty of loyalty because Pappas was trying to help his son as an O&R employee, nor does the fact that Pappas was trying to help his son relieve O&R of any responsibility for participating in the breach.

In short, the evidence shows that Pappas breached his contractual and fiduciary duties of loyalty to his employer, and O&R knew of and participated in the breach for its own benefit. O&R has disputed only immaterial facts, and there is no genuine issue of fact as to O&R's liability on any of the five claims that are the subject of HSI's motion for summary judgment.

## II. DAMAGES

HSI seeks the same damages from Pappas and O&R, a total of $404,867.27 against each party, jointly and severally. It seeks the same amount against Pappas Jr., less the $36,200 that O&R paid to Pappas.

### A. Compensation HSI Paid to Pappas

HSI seeks from all parties damages in the amount of the compensation it paid to Pappas during his employment, a total of $178,667.27. These damages are appropriate as against Pappas, as the employee who breached his fiduciary duty to HSI. *See Vendo Co. v. Stoner*, 321 N.E.2d 1, 14 (1974) ("borders upon the frivolous" to argue that employee who competed with employer should not have to repay compensation received from employer during the relevant time frame); *ABC Trans Nat. Transp., Inc. v. Aeronautics Forwarders, Inc.*, 413 N.E.2d 1299, 1314 (Ill. App. Ct. 1980) ("Under the law of [Illinois] it has long been recognized that 'an agent is entitled to compensation only on a due and faithful performance of all his duties to his principal.'") (quoting *Steinmetz v. Kern*, 32 N.E.2d 151, 154 (Ill. 1941)). HSI has alleged that Pappas utterly failed to perform his job duties in good faith, and the Court takes that allegation as

8

true as against Pappas due to his default. HSI is entitled to receive from Pappas restitution of the compensation it paid him.

HSI has not cited cases demonstrating that the same remedy is appropriate as against Pappas Jr. and O&R, who did not receive the benefit of the compensation HSI paid to Pappas. The cases HSI cites are distinguishable. Some of them may hold that an employer can recover compensation paid to employees who breached their fiduciary duty, but in these cases the breaching employees were the only bad actors, so these cases provide no guidance as to whether HSI can recover Pappas's compensation from participating third parties such as Pappas Jr. and O&R. *See, e.g., Vendo*, 321 N.E.2d at 14; *Veco Corp. v. Babcock*, 611 N.E.2d 1054, 1062 (Ill. App. Ct. 1993); *see also Smith-Shrader Co. v. Smith*, 483 N.E.2d 283, 285 (Ill. App. Ct. 1985) (breaching-employee defendant, but not competing-entity defendant, ordered to repay breaching employee's compensation to plaintiff employer).

HSI relies heavily on *Regnery v. Meyers*, 679 N.E.2d 74, 80 (Ill. App. Ct. 1997), in which the brother of a trustee of a company's voting trust induced the trustee to breach his fiduciary duty and vote the trust's shares in favor of a transaction that would permit both the brother and the trustee to purchase company stock for far less than fair market value and later resell the stock at an exponentially higher price. The Court held that the brother was directly liable because he induced the breach by "initiat[ing] the idea" of the conflicted transaction, fully participated in the breach, and "obtain[ed] the benefits therefrom" by profiting from the sale of the stock that the breach gave him the opportunity to purchase.

Thus, in *Regnery*, the brother was a third party who induced a breach of fiduciary duty and fully participated in the breach, but he also obtained benefits flowing directly from the breach, which was the basis for the award of damages against him. Neither Pappas Jr. nor O&R

9

obtained any portion of the compensation HSI paid to Pappas, so *Regnery* provides no support for the contention that the compensation is a proper measure of damages against them.

The Illinois Appellate Court has characterized the forfeiture of compensation paid by an employer to a breaching fiduciary as a remedy that is equitable in nature and that stems from "considerations of public policy rather than . . . the injury to the principal." *See Monotronics Corp. v. Baylor*, 436 N.E.2d 1062, 1066-67 (Ill. App. Ct. 1982) (citing *Steinmetz*, 32 N.E.2d at 154). The Court does not consider a remedy requiring Pappas Jr. and O&R to repay funds that were never in their possession to fit within the equitable framework that Illinois courts have described.[1] *See generally Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 362 (2006) (equitable remedies include restitution of particular funds or property in a defendant's possession, rather than imposition of personal liability for an obligation to pay money). Bolstering this conclusion is the fact that HSI has an adequate remedy at law against those defendants, as the Court will discuss in more detail below.

### B. Benefits Retained by O&R and Pappas From Pappas's Activities for O&R

#### 1. My Family Doc LLC and Danaher Accounts

HSI contends that a constructive trust should be imposed on the profits earned from the My Family Doc LLC and Danaher accounts. But the imposition of a constructive trust is erroneous when there is an adequate remedy at law. *Hill v. Names & Addresses, Inc.*, 571 N.E.2d 1085, 1095 (Ill. App. Ct. 1991). As the Court will discuss further below, in this case, HSI has an adequate remedy at law.

#### 2. The $36,200 O&R Paid Pappas While He Was Employed by HSI

---

[1] The same logic would presumably apply to the unjust enrichment claim, although HSI does not discuss it. To whatever extent the civil conspiracy claims or tortious interference might be treated differently with respect to whether HSI can recover damages for the compensation it paid to Pappas, HSI has made no argument or cited any cases to that effect.

10

HSI seeks to recover from Pappas and O&R (but not Pappas Jr.) the $36,200 that O&R paid Pappas while he was employed by HSI. The Court agrees that HSI is entitled to recover this amount from Pappas, under the principle that a fiduciary may not retain profits derived from his breach of fiduciary duty. *See Regnery*, 679 N.E.2d at 80.

As to O&R, while these payments serve as evidence of liability, HSI does not adequately explain, and the Court fails to see, how they translate into a measure of damages. The only authority HSI cites in support of its position is *Regnery*, 679 N.E.2d at 80, but in *Regnery*, the damages that the plaintiffs recovered were benefits that the defendants "reaped" directly from the breach of fiduciary duty, which allowed them to purchase stock at a low price and sell it at a profit. But the $36,200 HSI seeks does not represent an amount O&R "reaped" from its participation in Pappas's breach and retained; rather, viewing the evidence in the light most favorable to O&R, it represents a sum O&R *expended* to enlist Pappas's aid in putting together a sales manual and computer program. The Court will award these damages against Pappas, but not O&R.

### C. Lost Profits

HSI seeks a total of $190,000 in lost profits against all defendants. It contends that, when Pappas began his employment with HSI, HSI conservatively estimated that he would generate $600,000 in new business in his first year of employment, which translated into $150,000 in gross profit. Further, HSI estimated that he would grow the existing HSI accounts he was given by at least $40,000 in gross profit.

O&R does not seriously challenge these projections other than to argue, without citing any authority, that they are speculative. But the Illinois Supreme Court has recognized that lost

profit damages are always speculative to some degree, and their uncertain nature is a necessary evil:

> Lost profits, by their very nature, will always be uncertain to some extent and incapable of calculation with mathematical precision. For this reason, the law does not require that lost profits be proven with absolute certainty. Rather, ***the evidence need only afford a reasonable basis for the computation of damages which, with a reasonable of degree of certainty, can be traced to defendant's wrongful conduct***. Defendants should not be permitted to escape liability entirely because the amount of the damage they have caused is uncertain. To do so would be to immunize defendants from the consequences of their wrongful conduct.

*Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 199 (Ill. 2002) (internal citations omitted) (emphasis added); *see also Girsberger v. Kresz*, 633 N.E.2d 781, 791 (Ill. App. Ct. 1993). HSI has produced the projections it prepared for Pappas when he began his employment with HSI, and Michael Casamassa, a vice-president with HSI, has testified that these projections were extremely conservative in light of Pappas's level of experience and the performance of other experienced hires, who were similarly situated but generated more than double the gross profits HSI projected for Pappas in his first year. O&R cannot reasonably contend that HSI has not provided a reasonable basis for its claimed lost profit damages. O&R's lost profit damages are not based on improper speculation.

O&R does not otherwise take issue with HSI's method of calculating its lost profit damages, and the Court will therefore accept O&R's proposed figure. *See Abreu v. Unica Indus. Sales, Inc.*, 586 N.E.2d 661, 672-73 (Ill. App. Ct. 1991) (affirming trial court's approach to calculation of lost profit damages where no party objected in the trial court); *Unichem Corp. v. Gurtler*, 498 N.E.2d 724, 732 (Ill. App. Ct. 1986) (same). These damages are awarded against all three defendants, jointly and severally. *See Hill v. Names & Addresses, Inc.*, 571 N.E.2d 1085, 1090 (Ill. App. Ct. 1991).

### D. Punitive Damages

HSI argues that it should be entitled to punitive damages. The Court cannot agree at this stage. HSI has not proven anything more than that Pappas got carried away trying to help his son get started in his career, and on the present record, none of the defendants displayed the "reprehensibility" necessary for an award of punitive damages. *See V.I.M. Recyclers, L.P. v. Magner*, No. 03 C 343, 2005 WL 1745657, at *19 (N.D. Ill. July 21, 2005). In any case, HSI has not so much as suggested an amount of punitive damages the Court should award.

### **CONCLUSION**

For the reasons set forth above, the Court grants plaintiff's motion for partial summary judgment [59] in part and denies it in part, and it grants plaintiff's motion for default judgment [67] in part and denies it in part. The Court will enter judgment for plaintiff and against O&R on HSI's claims of aiding and abetting breach of fiduciary duty (Count II), tortious interference with contract (Count VI), tortious interference with fiduciary and legal duties (Count VII), unjust enrichment (Count X), and civil conspiracy (Count XIII). The Court will enter judgment for plaintiff and against Pappas and Pappas Jr. on all claims HSI has brought against them. Plaintiff is entitled to $214,867.27 against Pappas, and only against Pappas, for the compensation Pappas received from HSI and O&R. Plaintiff is additionally entitled to $190,000 in lost profit damages against all three defendants, jointly and severally. The parties shall draft a judgment order and submit it to the Court's proposed order email inbox. A status is set for October 27, 2016 at 9:30 a.m.

**SO ORDERED.** **ENTERED**: September 23, 2016



**HON. JORGE L. ALONSO**
**United States District Judge**